UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE JEROME ROBERTSON, | No. 2:17-cv-1426 WBS DB P |
| Plaintiff, | |
| v. | ORDER |
| T. KRAUSE, | |
| Defendant. | |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. (ECF Nos. 1, 11). This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

On June 7, 2019, the court issued an order and findings and recommendations in this matter. (ECF No. 10). The order recommended that this action be dismissed without prejudice for failure to timely file an application to proceed in forma pauperis. (See id. at 1). Given that plaintiff has since filed an updated application to proceed in forma pauperis (see ECF No. 11), the court shall vacate its June 7, 2019 order. It shall also dismiss the complaint with leave to amend.

**I.  IN FORMA PAUPERIS APPLICATION**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. §

////

1

1915(a).  (See ECF No. 11).  Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency to the Clerk of Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## II.      SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt

Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

**III.  PLEADING STANDARD**

**A.  Generally**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**B.  Linkage Requirement**

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between

the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## IV. PLAINTIFF'S COMPLAINT

A review of the complaint and its attached documents indicates that in January 2016, plaintiff was exposed to chemicals from an "OC expulsion grenade" when a fight between two other inmates occurred outside his cell. (See ECF No. 1 at 3-5, 11, 14). In the course of prison officials attempting to stop the fighting, defendant Krause threw the chemical grenade against plaintiff's cell door, where it exploded, causing the chemical agent to seep through the cracks in two cell doors, one of which was plaintiff's. (See id. at 3, 11, 14). As a result, plaintiff, and two other inmates who were in their cells at the time and were not involved in the fight were contaminated by the chemical grenade. (See id. at 14-15).

Plaintiff states that after being exposed to the chemical grenade, four to five hours elapsed before he was permitted to take a shower. (See id. at 3). He contends that as a result of this delay and of the prison's failure to give him clean linens, his skin burned for five days after the incident. (See id. at 3-4). Plaintiff also takes issue with the fact that High Desert State Prison does not have a decontamination shower. (See id. at 3).

Plaintiff contends that he should not have been exposed to the chemical grenade. (See id. at 10). As a result of the incident, plaintiff raises three claims of violation of right under federal law, including, but not limited to: cruel and unusual punishment and deliberate indifference in violation of the Eighth Amendment, and a violation of the Americans with Disabilities Act. (See id. at 3-5). He requests damages in the amount of $200,000.00. He also requests that High Desert State Prison be ordered to install a decontamination shower on its premises in compliance "with [the] policy [that governs] OC chemical exposure." (See id. at 6) (brackets added). The court takes these facts into consideration when evaluating the viability of plaintiff's claims.

////
////
////

4

## V. APPLICABLE LAW

### A. Cruel and Unusual Punishment – General Standard

"The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners. Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (alteration in original) (internal quotation marks omitted) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)).

Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. Whitley, 475 U.S. at 319. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. Accordingly, "courts considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) (citing Hudson, 503 U.S. at 8).

### B. Cruel and Unusual Punishment – Prison Security Measure Standard

"The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319. "[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in

addition to the possible harms to inmates against whom force might be used." Id. at 320.

When a prison security measure is undertaken to resolve a disturbance that indisputably poses significant risks to the safety of inmates and prison staff, the question as to whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or the measure was taken maliciously and sadistically for the very purpose of causing harm. Whitley, 475 U.S. at 320-21. (quotation marks omitted) (citation omitted).

"Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates. Whitley, 475 U.S at 322.

### C. Deliberate Indifference

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). This second prong... "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact. Farmer, 511 U.S. at 842. Thus, liability may be avoided by presenting evidence that the

defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. See Farmer, 511 U.S. at 844-45; see also Simmons v. Navajo County Ariz. 609 F.3d 1011, 1017-18 (9th Cir. 2010) (requiring official be subjectively aware of serious medical need and fail to adequately respond to need to establish deliberate indifference).

The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Then, he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm does not violate the Cruel and Unusual Punishments Clause. See id. at 835.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). It does not include mere negligence in diagnosing or treating a medical condition or a difference of medical opinion. Colwell v. Bannister, 763 F.3d 1060, 1081 (9th Cir. 2014) (citing Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) and Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

**D.  Right to Personal Security**

Prison officials must take reasonable measures to guarantee the safety of inmates. See Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official can be liable for failing to protect inmates only if: (1) there is an "excessive" and "substantial risk of serious harm," and (2) the official is subjectively aware of that risk but deliberately ignores it. Farmer, 511 U.S. at 828-29. A single, isolated incident does not amount to an "excessive" or "substantial" risk to inmate safety. See, e.g., LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (finding shackling dangerous inmate in shower does not create sufficiently unsafe condition even if inmate might fall; slippery prison floors do not state arguable claim for cruel and unusual punishment).

Negligence and gross negligence do not constitute deliberate indifference. Farmer, 511 U.S. at 835-36 (negligence); see Dent v. Sessions, 900 F.3d 1075, 1083 (9th Cir. 2018) (citation omitted) (gross negligence). "Accidents" and "inadvertent failure" do not rise to the level of

deliberate indifference, either.  See Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); see, e.g., Daniels v. Williams, 474 U.S. 327, 328 (1986) (finding sheriff's deputy not liable under Section 1983 for injuries sustained by inmate who slipped on pillow negligently left on stairs); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (finding gross negligence insufficient to state claim for denial of medical needs to prisoner).

## VI. DISCUSSION

### A. Claim One

#### 1. Facts

In Claim One, plaintiff states that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when defendant Krause threw an "OC expulsion grenade" against his cell door as he sat on the toilet.  As a result, white powder chemicals seeped through plaintiff's cell door, covering him from head to knee.  (See ECF No. 1 at 3).

Plaintiff states that he has asthma[1] and that because of the chemicals, he was unable to breathe.  (See id.).  Consequently, he began kicking his cell door.  This led to him being released from his cell.  (See id.).  After plaintiff's release from his cell, plaintiff was placed in the shower area, but he was not given a shower.  (See id.).  Instead, one Sergeant Smith removed him from the shower area and took him to the main yard.  (See id.).  Next, plaintiff was taken to a prison medical facility where he attempted to get the chemicals off himself.  (See id.).  He contends that he was not given a shower until four or five hours later.  (See id.).  He states his skin burned for five days afterwards because of a failure in the implementation of policy.  (See id.).

Plaintiff claims that defendant Krause's actions demonstrated deliberate indifference to human life and disregarded the safety of the prisoners who were not involved in the incident. (See id.).  He also contends that defendant Krause's actions constituted cruel and unusual punishment.  (See id.).

////

---

[1] In Claim One, plaintiff also states that at the time of the incident in question, he was a participant in a mental health program.  (See ECF No. 1 at 3).  However, he fails to demonstrate how his mental health issues are relevant to this particular claim.  (See generally ECF No. 1 at 3).

8

## 2. Analysis

### a. Use of Grenade

Plaintiff alleges that defendant Krause's use of an expulsion grenade outside his cell door constituted a violation of his Eighth Amendment rights to be free from cruel and unusual punishment and/or deliberately indifferent behavior. This claim is without merit.

Plaintiff makes no claim that defendant Krause used the grenade maliciously and sadistically for the specific purpose of causing harm to plaintiff. See Whitley, 475 U.S. at 320-21. On the contrary, the record provided indicates that the chemical grenade was detonated in an effort to restore prison security. (See ECF No. 1 at 14-15). In other words, this was not a purposeful act taken by defendant Krause that was specifically directed towards plaintiff as a viable cruel and unusual punishment claim requires. Indeed, the requisite levels of intent to state viable claims of cruel and unusual punishment or deliberate indifference are not present. See Whitley, 475 U.S. at 320-21 (malicious and sadistic intent requirement to establish cruel and unusual punishment); see also Farmer, 511 U.S. at 837 (knowledge and disregard of excessive risk required to establish deliberate indifference); Jett, 439 F.3d at 1096 (purposeful act or failure to respond needed to establish deliberate indifference).

Moreover, defendant Krause discharging a chemical grenade in order to stop the two fighting inmates was arguably necessary, given that the inmates failed to stop fighting and get down on the ground when first ordered to do so. (See ECF No. 1 at 14). The fact that plaintiff was harmed in the process was a secondary and unfortunate result. Such injury is not actionable. See generally Whitley, 475 U.S. at 319 (stating obduracy and wantonness, not inadvertence or error in good faith when restoring control over cellblock characterizes conduct prohibited by Cruel and Unusual Punishments Clause); Farmer, 511 U.S. at 837 (knowledge and disregard of excessive harm requirement).

Finally, the actions of prison officials in such situations are entitled to deference. See Bell, 441 U.S. at 547. For these reasons, plaintiff's claim that defendant Krause's detonation of the chemical grenade at plaintiff's cell door violated plaintiff's Eighth Amendment protections against cruel and unusual punishment and of deliberate indifference is without merit.

### b. Failure to Provide Timely Shower

Plaintiff's assertion that he was not given a shower until four to five hours after the incident and that as a result, his skin burned for days is not actionable as it is currently alleged. This is because it is unclear in this claim whether the alleged delay in plaintiff receiving a shower was due to defendant Krause actively and maliciously preventing him from receiving one or whether it was due to the action or inaction of some other individual at the prison. (See ECF No. 1 at 3). Plaintiff must clarify this.

The facts provided indicate that defendant Krause threw the grenade that harmed plaintiff. However, they do not identify who was responsible for releasing him from his cell after the incident, who actually did so, and how long it took that individual to release him. On the contrary, plaintiff simply asserts that after he had been exposed to the chemical, at some point, he was taken to a shower area. (See id. at 3). Thereafter, one Sergeant Smith removed plaintiff from that area – presumably without having given plaintiff a shower – and took him to the prison's medical facility. (See id.).

The record provides no facts alleging that plaintiff asked either defendant Krause or Sergeant Smith for a shower and that his request was refused. Furthermore, the records provided by plaintiff indicate that after the incident: (1) Sergeant Smith took him out to the yard for air and escorted him to medical; (2) at medical, plaintiff was able to wash his face to try to get the chemicals off, and (3) plaintiff and two other affected inmates were given a shower after the incident, although precisely how long after the incident the shower was provided is not clear. (See id. at 11, 15). In any event, there is no indication in the complaint that defendant Krause was the person who prevented plaintiff from receiving a shower in a timely manner and that he did so knowing the harm it would cause plaintiff. (See id. at 3); see, e.g., Clement v. Gomez, 298 F.3d 898, 904-905 (9th Cir. 2002) (pepper spray incident describing requisite knowledge and culpable mental state to establish deliberate indifference).

To make this claim cognizable, plaintiff will need to clarify who was responsible for ensuring that he received a shower right after the incident. In addition, plaintiff will need to inform the court of the following: (1) who – if anyone – he asked for a shower; (2) when he

asked for it, and (3) who – if anyone – denied him a shower immediately after the incident. Plaintiff will be given the opportunity to amend the complaint in order to provide this information.

### c. Failure to Provide Decontamination Shower at Prison

The fact that there is no decontamination shower at High Desert State Prison (see ECF No. 1 at 3, 11) does not appear to give rise to an action, either. Plaintiff fails to reference federal law or any state-created right or interest that suggests otherwise. (See generally ECF No. 1). For these reasons, Claim One as currently alleged is not cognizable.

### B. Claim Two

#### 1. Facts

In Claim Two, plaintiff reiterates the facts. (See ECF No. 1 at 4). However, in this claim, plaintiff argues that defendant Krause's actions were negligent. Specifically, plaintiff states that defendant Krause breached his duty of care to him when he "disregarded the excessive risk of physical harm and injuries to [him]" when he threw the grenade inside the housing unit without warning or provocation and that defendant Krause's actions were negligent in violation of the Eighth Amendment. (See generally id. at 4). As a result, plaintiff states, he received serious injuries that continue to cause "great mental, physical and emotional suffering." (Id. at 4). Plaintiff also contends that the "attack" on him by defendant Krause via the use of the chemical grenade without warning or provocation, violated prison policies, procedures and regulations and that it constituted a "total disregard to [sic] human life or [sic] safety of other[] prisoners." (Id.) (brackets added).

Plaintiff further contends that after the incident, his burning continued for five days until he was given clean linen and showers. (See ECF No. 1 at 4). In light of these facts, plaintiff argues, defendant Krause must be held accountable for causing him pain and suffering, for subjecting him to cruel and unusual punishment, and for being "deliberate[ly] indifferen[t] to plaintiff's life."[2] (See id.) (brackets added).

---

[2] In Claim Two, plaintiff also references a violation of either 28 U.S.C § 1367 or 28 U.S.C. § 1347. (See ECF No. 1 at 4). Plaintiff's handwriting is unclear. In any event, neither of these

### 2. Analysis

#### a. Negligent Use of Grenade

To the extent that plaintiff argues that defendant Krause's actions were negligent when he launched the chemical grenade, this claim is without merit. The required element of a culpable state of mind on defendant Krause's part is lacking in this claim. See generally Somers, 109 F.3d at 622. There is no Eighth Amendment protection from harm due to negligent behavior. Moreover, the court is unaware of and plaintiff fails to point to any state law that establishes a right of inmates to be free from negligent behavior of prison authorities when trying to restore order and maintain safety in a prison.

#### b. Negligent Failure to Protect from Harm

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates. See Farmer, 511 U.S. at 832. However, to the extent plaintiff asserts that defendant Krause was negligent in protecting him from harm, thus denying him his right to personal security in violation of his constitutional rights, once again, allegations of negligence do not establish the requisite mental state needed to establish deliberate indifference violations under the Eighth Amendment. See Farmer, 511 U.S. at 835-36; Colwell, 763 F.3d at 1081 (stating deliberate indifference does not include mere negligence in diagnosing or treating a medical condition) (citing Hutchinson, 838 F.2d at 394). The offending conduct must be wanton. Colwell, 763 F.3d at 1081. Furthermore, because defendant Krause's use of the chemical grenade was a single, isolated incident, it did not constitute an "excessive" or "substantial" risk to inmate safety. See, e.g., LeMaire, 12 F.3d at 1457.

Finally, as stated earlier, the record indicates that the chemical grenade was detonated by defendant Krause in an effort to restore prison security. (See ECF No. 1 at 14). Therefore, once again, the actions of prison officials in such situations are entitled to deference. See Bell, 441 U.S. at 547.

////

---

statutes creates grounds to establish a violation of federal right.

### c. Negligent Failure to Provide Clean Linens[3]

Plaintiff appears to argue that defendant Krause was responsible for providing him with clean sheets and that he was negligent in doing so. As previously stated, an allegation of negligence cannot support an Eighth Amendment claim. As such, this claim is without merit.

However, plaintiff may be arguing that defendant Krause or another prison employee demonstrated deliberate indifference, to plaintiff's medical needs when he or she failed to provide him with clean sheets within a reasonable amount of time after plaintiff's chemical exposure. If so, this part of Claim Two is potentially cognizable. However, as stated in Claim One regarding receiving a timely shower, in Claim Two, plaintiff must also clarify who he asked for clean sheets, when he asked for them, and who – if anyone – denied his request for clean sheets. Plaintiff will be given an opportunity to amend the complaint in order to provide this information as well.

### d. Failure to Follow Prison Regulations

Finally, to the extent that plaintiff asserts a violation of the Eighth Amendment within Claim Two on the grounds that defendant Krause failed to follow prison regulations (see ECF No. 1 at 4, 11) (plaintiff stating defendant violated "policies, procedures and regulations" and citing to Cal. Code Regs. tit. 15, § 3268(l)),[4] this is not an actionable claim. A state's violation of its own laws does not create a cognizable federal claim. See generally 42 U.S.C. § 1983; see also Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (citation omitted). Furthermore, one may not transform state law issues into federal ones by simply asserting federal constitutional claims. See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). For these reasons, this part of Claim Two is not cognizable on federal review and should be dismissed.

////

////

---

[3] In Claim Two, plaintiff alleges defendant Krause negligently failed to provide him both with clean linens and showers. (See ECF No. 1 at 4). Because the court has generally addressed the shower issue in Claim One, the court will not address it again in Claim Two. Instead, it will only address the claim as it relates to the failure to provide clean linens.

[4] Section 3268 states in part, "Any person exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as practical."

**C.     Claim Three**

    **1. Facts**

In Claim Three, when asked to identify which constitutional or other federal civil rights of plaintiff's were violated, plaintiff writes: "Negligence per se in violation of the Colemen decision in violation of [the] ADA and Eighth Amendment." (ECF No. 1 at 5) (brackets added). To support this assertion, plaintiff again states that defendant Krause threw a chemical grenade at plaintiff's cell door and that those chemicals seeped through it. (See id.). In addition, in Claim Three plaintiff again states that he has asthma and that because of it, he was unable to breathe when defendant Krause fired the grenade. (See id.). For these reasons he claims that defendant Krause endangered his life and caused serious injury to his face and body. (See id.).

    **2. Analysis**

There are several problems with Claim Three that render it not cognizable. First, plaintiff does not identify with sufficient specificity which rights guaranteed him under "Colemen" or under the ADA protect him from acts of negligence per se. (See generally ECF No. 1 at 5). Conclusory statements, without more, are insufficient to establish a claim of relief. See Iqbal, 556 U.S. at 678.

Next, plaintiff appears to argue that his Eighth Amendment rights were violated by Krause when he threw the grenade at plaintiff's cell door. Plaintiff alleges that Karuse's actions constituted cruel and unusual punishment and/or demonstrated deliberate indifference to risk to plaintiff's well-being as an asthmatic. However, this claim is without merit as well.

As with plaintiff's previous claims, plaintiff makes no allegations which support that Krause had a culpable state of mind. Plaintiff fails to allege that defendant Krause knew that plaintiff had asthma at the time the grenade was used, nor is there any indication that defendant Krause intentionally caused it to be detonated in front of plaintiff's cell door in order to specifically harm plaintiff. There is nothing in the complaint or in its attachments indicating there was some sort of antagonistic history between plaintiff and defendant Krause that might support an allegation of specific intent to harm plaintiff and thus support a deliberate indifference claim. Additionally, like harm experienced due to negligence, neither inadvertent nor accidental harm

may support a deliberate indifference claim.  See Estelle, 429 U.S. at 105-106; see, e.g., Wood, 900 F.2d at 1334.

Finally, to the extent plaintiff asserts that his harm was due to the prison failing to follow its own regulations and procedures, once again, this part of the claim is not actionable.  The violation of a state regulation does not in itself present a federal question.  See generally 42 U.S.C. § 1983; see also Cousins, 568 F.3d at 1070 (citing Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) for idea that there is no Section 1983 liability for violating prison policy; plaintiff must prove official violated his constitutional right).

## VII. CONCLUSION

The claims in plaintiff's complaint are unclear, repetitive to some degree and often overlap.  To the extent that the court was able to glean substantive, independent claims from the complaint, it finds that the claims therein against defendant Krause, as currently presented, are either without merit on their face or they do not provide enough information to be cognizable.

In sum, plaintiff's arguments in Claim One alleging a violation of his Eighth Amendment rights due to defendant Krause's use of the chemical grenade and the prison's failure to install a decontamination shower are without merit.  His claims related to negligence under the Eighth Amendment and the prison's failure to follow its own regulations and procedures in Claims Two and Three are also without merit.

None of the aforementioned claims can be revived.  However, plaintiff's claims regarding the deprivation of showers and clean linen after his chemical exposure in Claims One and Two have the potential to be cognizable.  Therefore, the court will afford plaintiff the opportunity to provide it in an amended complaint.

In filing an amended complaint, Plaintiff is advised that he must adhere to the following standards for stating claims for relief under § 1983.

- Plaintiff must clearly identify each defendant and describe just what that defendant did that violated his constitutional rights.  Plaintiff should carefully review the legal standards set out above to determine whether a defendant's conduct amounts to a constitutional violation.

15

- Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).
- Plaintiff must make a short, plain statement of the facts supporting each claim. See Fed. R. Civ. P. 8(a).
- Plaintiff may allege multiple claims against a single defendant. Fed. R. Civ. P. 18(a). Each separate claim should be contained in a separate, numbered set of paragraphs. However, Rule 20(a)(2) permits a plaintiff to sue multiple defendants in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and there is a "question of law or fact common to all defendants." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)). Simply alleging a "conspiracy" does not transform unrelated claims into related claims.
- Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief.
- An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleadings are superseded.

16

- Plaintiff must exhaust his administrative remedies before filing suit. 42 U.S.C. § 1997e(a).
- Finally, plaintiff is advised that by signing an amended complaint, he certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

Accordingly, IT IS HEREBY ORDERED that:

1. The court's order and findings and recommendations issued June 7, 2019 (ECF No. 10) is VACATED;

2. Plaintiff's motion to proceed in forma pauperis filed June 11, 2019 (ECF No. 11) is GRANTED;

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith;

4. Plaintiff's complaint filed July 6, 2017 (ECF No. 1) is DISMISSED with leave to amend, and

5. Within thirty days of the date of service of this order, plaintiff shall file a first amended complaint. Failure to file an amended complaint within the time allotted may result in the dismissal of this action for failure to prosecute.

Dated: July 9, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.CIVIL RIGHTS/robe1426.scrn